IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | NO. 04-10299-PBS |
| VALENTIN MARTINEZ, ) | |
| a.k.a. "Vale," ) | |
| BENITO GRULLON, ) | |
| a.k.a. "Quico" ) | |

**MOTION TO RESOLVE CONFLICT OF INTEREST ISSUES**

The United States respectfully moves this Court to conduct a hearing pursuant to its supervisory authority and Federal Rule of Criminal Procedure 44(c) to determine whether a conflict of interest arises from attorney Ronald Ian Segal's representation of both defendant VALENTIN MARTINEZ ("MARTINEZ") and defendant BENITO GRULLON ("GRULLON") and, if so, whether such conflict can be waived. In the event that the Court determines that a conflict does indeed exist and cannot be waived, the government requests that the Court enter an order disqualifying attorney Ronald Ian Segal ("Attorney Segal") from further representation of one or both defendants in this matter. In support of this motion the government states as follows:

**I.   Relevant Procedural Background**

On May 3, 2004, both MARTINEZ and GRULLON were arrested pursuant to separate criminal complaints following a long term DEA wiretap investigation. GRULLON was originally charged in a separate criminal complaint with a single count of possession with intent to distribute cocaine on July 30, 2003. (See Docket No. 1, U.S.

v. Grullon, 04-MJ-01731-CBS).  Attorney Segal entered his appearance on behalf of GRULLON on May 5, 2004.  (See Docket No. 4, U.S. v. Grullon).  MARINTEZ was charged (along with nineteen other defendants) in a single criminal complaint which charged conspiracy to distribute cocaine (See Docket No. 1, U.S. v. Martinez et al., 04-MJ-01685-CBS).   On May 7, 2004, Attorney Segal entered his appearance on behalf of MARTINEZ.  (See Docket No. 43, U.S. v. Martinez).

On October 6, 2004, both MARTINEZ and GRULLON were charged together in the First Superseding Indictment along with twenty-one other defendants in Criminal No 04-10299-PBS with conspiracy to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. § 846 (See Docket No. 26).  On November 3, 2004, Chief Magistrate Swartwood made a inquiry on the record into the dual representation of Attorney Segal of both MARTINEZ and GRULLON.  Following this inquiry, the Judge Swartwood indicated that he was satisfied that both MARTINEZ and GRULLON understood the dangers of dual representation and had waived the conflict.

On January 20, 2005, Judge Swartwood held a second status conference.  During this status conference, both MARTINEZ and GRULLON (both represented by Attorney Segal) as well as GERMOSEN and ESTRADA requested a trial before this court. GERMOSEN is represented by Attorney Segal's associate, Attorney Steven Judge.[1] Thereafter, on March 4, 2005, MARTINEZ and GRULLON filed a motion to dismiss the

---

[1] Both Attorney Segal and Judge share the same office space and office phone number.  Their firm is listed on the docket sheet at Segal & Judge, 23 Central Avenue, #605, Lynn, MA 01901.

indictment for alleged Speedy Trial violations. (See Docket No. 84, 86, and 86). On March 10, 2005, GERMOSEN (represented by Attorney Segal) joined MARTINEZ and GRULLON's objection and motion to dismiss. (See Docket No. 82).

On March 23, 2005, the government obtained a Second Superseding Indictment which alleged additional substantive charges against MARTINEZ and GERMOSEN and added new defendants. Count six of the new indictment charges MARTINEZ with a substantive count of distribution of cocaine; count seven charges MARTINEZ with a substantive count of possession of a firearm in furtherance of a drug trafficking crime; and count eight charges GRULLON with a substantive count of distribution of cocaine.

## II. Relevant Factual Background

In January 2003, DEA began investigating a cocaine trafficking organization based in the North Shore area of Massachusetts. The investigation initially focused on the cocaine trafficking activities of JOSE ROSALES, a.k.a. "Tony" in Peabody. On July 31, 2003, DEA began intercepting wire communications over two of ROSALES' cellular phones pursuant to a court authorized Title III wiretap. In August 2003, DEA began intercepting the cellular telephone calls of not only ROSALES, but also other members of the organization including VALENTIN MARTINEZ, a.k.a. "Vale," ROGELIO GARCIA, and MANUEL GERMOSEN, a.k.a "Kelvin Madera," a.k.a. "Manolo." These wire interceptions revealed evidence of an ongoing cocaine distribution organization that was obtaining multi-kilogram amounts of cocaine from Mexico and distributing the cocaine to a broad customer base in Lynn and other North Shore towns in MA.

Before the initiation of wire interceptions, on July 26, 2003, MARTINEZ (along with co-defendant GARCIA) was involved in a cocaine deal in which MARTINEZ distributed approximately twenty kilograms of cocaine to other members of the conspiracy. As part of the same cocaine transaction, MARTINEZ also possessed and distributed an Uzi firearm to another member of conspiracy. Following this transaction, law enforcement agents seized approximately seventeen of these twenty kilograms cocaine and three firearms, including the Uzi firearm which MARTINEZ had possessed and distributed.

Days later, before the initiation of wire interceptions, on July 30, 2003, in Lynn, MA, GRULLON sold approximately 125 grams of cocaine to a DEA cooperating source. Once the wiretaps began, it became apparent that GRULLON was purchasing large quantities of cocaine from GERMOSEN for re-distribution in Lynn and elsewhere. GERMOSEN's was obtaining this cocaine primarily from his brother-in-law, VALENTIN MARTINEZ. In addition, at times when GERMOSEN and MARTINEZ were out of cocaine, GERMOSEN obtained large quantities of cocaine from GRULLON.

### III. Legal Standard - Conflict of Interest and Dual Representation

The Sixth Amendment guarantees the right to effective assistance of counsel to all criminal defendants. Strickland v. Washington, 466 U.S. 668 (1984). As the Supreme Court has observed, the purpose of that Amendment "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will

inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). See also, United States v. Coneo-Guerrero, 148 F.3d 44, 46 (1st Cir. 1998), cert. denied, 526 U.S. 1094 (1999). Thus, while federal courts recognize a presumption in favor of a defendant's counsel of choice, the right to counsel of choice is not absolute. Such a presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Id., 486 U.S. at 164. "When two or more defendants share the same counsel, conflicts of interest might arise." United States v. Hernandez-Lebron, 23 F.3d 600, 603 (1st Cir. 1994). A district court may disqualify an attorney where a mere "potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 160.

    In this case, a significant potential for conflict exists between the joint representation of Attorney Segal of both MARTINEZ and GRULLON at trial. Although Magistrate Judge Swartwood made an inquiry into this joint representation on November 3, 2004, the potential for conflict has been exacerbated by recent events, including the return of the Second Superseding indictment. For this reason, the government asks that the Court conduct a hearing pursuant to United States v. Foster, 469 F.2d 1 (1st Cir. 1972).

    Balancing MARTINEZ's and GRULLON's right to select their own counsel against their rights to conflict-free representation "requires that joint representation be permitted only if each defendant knowingly and voluntarily assumes the risk of potential conflicts." Coneo-Guerrero, 148 F.3d at 46. Accordingly, the government respectfully

requests the Court to hold a Foster hearing to:

> comment on some of the risks confronted where defendants are jointly represented to insure that defendants are aware of such risks, and to inquire diligently whether they have discussed the risks with their attorney, and whether they understand that they may retain separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government.

Foster, 469 F.2d at 5; see Fed. R. Crim. P. 44(c).  If the Court makes such inquiry, both MARTINEZ and GRULLON will have a heavy burden of persuasion challenging any later conviction in this matter on the grounds of ineffective assistance of counsel.  Foster, 469 F.2d at 5.  After a Foster hearing, each would "bear the burden of showing that the joint representation caused an *actual* conflict of interest."  Coneo-Guerrero, 148 F.3d at 49 (emphasis added).

## CONCLUSION

For all the above reasons, the government respectfully requests that the Court hold a hearing to determine whether Attorney Segal's representation of both MARTINEZ and GRULLON creates a conflict of interest and, if so, whether or not that interest is subject

to waiver and whether one or both defendants are willing to waive that conflict.

          Very truly yours,

          MICHAEL J. SULLIVAN
          United States Attorney

By:   /s/ Neil J. Gallagher, Jr.
       Neil J. Gallagher, Jr.
       Assistant U.S. Attorney